NORTHERN LUMBER COMPANY et al., appellants, v. SUSAN S. WHITE et al., appellees; MARY WHITE THOMPSON et al., intervenors.

No. 49649.

(Reported in 96 N.W.2d 463)

May 5, 1959.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellants.

Westfall, Laird & Burington, of Mason City, for appellee Leo E. Fitzgibbons, guardian of Susan S. White, and intervenor James S. White.

Fitzgibbons & Fitzgibbons, of Estherville, for appellees Leo E. Fitzgibbons, individually and as guardian of Susan S. White, George W. Thompson, George L. Avery, and Guy U. Noel.

D. D. Sanderson, of Estherville, for intervenors Mary White Thompson and Susan White Avery.

HAYS, J.—The Northern Lumber Company, an Iowa Corporation, was organized in 1892 by James D. Spaulding and George A. Lyon. It was capitalized for $200,000 consisting of 2000 shares of $100 par value stock. Except for a few shares the stock has continuously been held by the Spaulding and Lyon families with the Spauldings holding a substantial majority. Its Board of Directors, consisting of three members, has for many years been dominated by the Spaulding interests.

In 1932-33 the Lyon family held 318 shares. Susan S. White and Ella M. Baker, daughters of James D. Spaulding, held 644 shares and 680 shares respectively. The Board of Directors consisted of F. J. White, husband of Susan S. White, J. S. White, son of F. J. and Susan S. White, and L. J. Bennett, who was not related to the Spaulding or Lyon families and who held 20 shares of stock. There were approximately 1870 shares outstanding.

At that time the company held Susan S. White's note, dated December 31, 1931, in the sum of $10,000 at 6% interest, on which there was a balance due of $9000 with interest from December 31, 1931. It also held a note of G. S. Avery & Son, Inc., G. S. Avery, Jr., and G. S. Avery, for $10,300 at 8% interest dated January 1, 1931, upon which there was due $9367.50 plus interest from January 1, 1931. This note was secured by certain collateral held by the company.

On March 25, 1933, at an adjourned meeting of the company stockholders, attended in person by the three directors, representing 95 shares, and proxies in the number of 1600 shares, a resolution was adopted authorizing the purchase of 200 shares of stock, held by Susan S. White at $100 per share, the proceeds therefrom to be applied on the payment of the two notes abovementioned. The next day Susan S. White entered into a contract for such sale, the shares were transferred to the company and the notes and collateral, with some additional credit to consume the $20,000, were assigned to Susan S. White.

Paragraph 5 of that contract provided: "The Northern Lumber Company does hereby agree, in the event of any future offer for the purchase from them of any or all of the 200 shares of the Capital Stock of the Northern Lumber Company purchased by them by this contract, to first offer for sale to the party of the first part of this contract [Susan S. White] any or all of said stock at $100.00 (one hundred dollars) per share, and in the event under section '5' that the first party does not accept and buy under such offer, then the Northern Lumber Company shall next offer for sale to the blood relatives of said first party any or all of said stock at $100.00 per share."

The contract was signed by Susan S. White, Northern Lumber Company, F. J. White, president, and J. S. White, secretary.

In 1954 the Board of Directors consisted of G. W. Thompson, son-in-law of Susan S. White, G. L. Avery, nephew of Susan S. White, and G. U. Noel, not related to the Spaulding or Lyon families. On April 16, 1954, an offer having been made to the company by one Lindeberg to purchase the 200 shares of treasury stock, received by the company from Susan S. White in 1933, the stock was offered to Susan S. White as

provided for in said 1933 contract. It was accepted, $20,000 was paid to the company and the stock was issued to Susan S. White. Shortly thereafter the company tendered to her the $20,000 and demanded that she assign the 200 shares to the company. Upon her refusal, this action in equity was commenced wherein it was prayed that the 1954 transaction be held null and void, that the stock be ordered returned to the company and she be directed to accept the $20,000 she had paid for it. Susan S. White by cross-petition asks that title to the 200 shares be quieted in her. By order of the trial court, defendants Twining, representing the Lyon stock, and the National Bank & Trust Company of South Bend, Indiana, trustee of the Ella M. Baker stock, were brought into the case and they join with plaintiff Northern Lumber Company in the relief sought.

The trial court held both the 1933 contract and the 1954 sale of stock to be void, and after adjusting interest and dividend payments held that upon payment by Susan S. White of $5571.49 to the company, title to the stock should be quieted in Susan S. White. The Northern Lumber Company and the Twinings as representative stockholders have appealed.

Appellants assign four propositions as a basis for a reversal: (1) Defendants stood in a fiduciary relation to appellants. (2) In the 1954 transaction Susan S. White and the directors violated their fiduciary duty by transferring the stock for a grossly inadequate consideration. (3) Susan S. White waived any right claimed under the 1933 contract by voting for the adoption of renewal of Articles of Incorporation in 1952. (4) Proper remedy is the cancellation of the 1954 stock transfer and restoration of the 200 shares of treasury stock. Susan S. White is not entitled to relief on her cross-petition.

■ I. That defendant directors, and Susan S. White, as a major stockholder, stood in a fiduciary relationship to the company and the other stockholders may be conceded. Gord v. Iowana Farms Milk Co., 245 Iowa 1, 60 N.W.2d 820; Atlas Coal Co. v. Jones, 245 Iowa 506, 61 N.W.2d 663; Des Moines Bank & Trust Co. v. George M. Bechtel & Co., 243 Iowa 1007, 51 N.W.2d 174.

■ II. The claim that Susan S. White, having voted her stock in 1952 for renewal of the Articles of Incorporation

without asking that her rights under the 1933 contract be preserved, has waived her rights thereunder has no merit. Clark v. First National Bank, 219 Iowa 637, 259 N.W. 211, cited and relied upon by appellant is not in point.

III. Propositions 2 and 4, i.e., Susan S. White and other defendants were guilty of bad faith in transferring the stock in 1954 for inadequate consideration, and that the proper remedy is status quo at the time the 1954 transfer was made will be considered together.

While appellants, by way of amendment to petition and in answer to Susan S. White's request that title to the stock be quieted in her, state that *the 1933 contract and particularly paragraph 5 thereof constitute a breach of fiduciary obligation,* nowhere on this appeal is it urged by them that the contract was and is void. The most that is claimed by appellants is that paragraph 5 of the contract is void, and this only in the pleadings. In their brief and argument appellants state, "Plaintiffs-appellants do not claim any rescission of the 1933 sale of stock by Susan S. White to Northern Lumber Company but restrict and limit their request for relief to the 1954 transaction alone." On the other hand appellees rely entirely upon the 1933 contract as the authority for the transaction in 1954.

The law is well settled that contracts between parties standing in a fiduciary relation are not void but voidable. In the absence of an attack thereon they stand as any other contract, but, when attacked, are presumed to be fraudulent, with the burden resting upon the one who has the fiduciary obligation to show that it was fair between the parties. Buell v. Buckingham & Co., 16 Iowa 284, 85 Am. Dec. 516; Hoyt v. Hampe, 206 Iowa 206, 214 N.W. 718, 220 N.W. 45; Poole v. Poole, 219 Iowa 70, 257 N.W. 305; Gord v. Iowana Farms Milk Co., 245 Iowa 1, 60 N.W.2d 820; 19 C. J. S., Corporations, section 783.

While, under the record and the theory upon which appellants seek affirmative, relief, we do not think the validity of the 1933 contract is at issue, the record discloses the following facts in addition to what has herein been stated: Due notice to all stockholders of the annual meeting to be held January 10, 1933, was given. It stated the meeting was for the purpose of electing

directors and the transaction of such other business as may legally come before the meeting. Represented by proxy, authorizing full authority to act, were approximately 1600 shares comprising the Susan S. White, Ella M. Baker, and the Lyon family stock. Due to absence of directors on the scheduled date the meeting was adjourned until in March. At that meeting a resolution was adopted setting forth an offer by Susan S. White to take up the two notes, above-described, by the sale of the 200 shares to the company, and authorizing the acceptance of the offer. The next day the contract in question was signed, the shares assigned to the company and the notes and collateral to Susan S. White. Both the resolution and the contract were attached to minute book and appear there today. On the trial, one B. F. Osborn, a C.P.A., as a witness for appellants, testified that at said time the book value of the stock was $127.63 per share; that the company in 1932 sustained substantial losses and its prospects were not good.

 The right of a corporation to purchase its stock upon such terms as the parties may agree upon and the right to grant options or priorities to the parties for the repurchase thereof are not questioned; and, keeping in mind the duty of fairness to the stockholders, such powers are legal. McDonald v. Farley & Loetscher Mfg. Co., 226 Iowa 53, 283 N.W. 261; Larson v. Superior Auto Parts, Inc., 275 Wis. 261, 81 N.W.2d 505; Baumohl v. Goldstein, 95 N. J. Eq. 597, 124 A. 118. Considering this contract as of the date of its execution together with all attending facts and circumstances, and especially the fact that its legality is not in issue, we think the same was valid.

However, appellants' position appears to be that of "have your cake and eat it too." They in effect concede that only by virtue of a valid contract can there be any legal claim to the White's 200 shares of stock, but that since this stock was received by the company its book value has increased from $127.63 to over $500, and to now allow Susan S. White to purchase same at the contract price constitutes a breach of fiduciary duty; that the 1954 transaction being fraudulent with Susan S. White being a party thereto, this should be set aside, the stock returned to the company and Susan White's $20,000 returned to her. In substance what appellants ask is that paragraph 5 of the 1933

contract be rescinded, leaving the sale to the company but removing the option to repurchase. Clearly, the contract was not severable and must stand or fall as a whole. Wisconsin Lumber Co. v. Greene & Western Tel. Co., 127 Iowa 350, 101 N.W. 742, 69 L. R. A. 968, 109 Am. St. Rep. 387; Inman Mfg. Co. v. American Cereal Co., 124 Iowa 737, 100 N.W. 860; 12 Am. Jur., Contracts, section 444.

The trial court found, and the record sustains it, that the position of the Baker Trust and the Twinings as stockholders has not changed since the 1933 contract and their interests have not been prejudiced by the contract; that while the 1954 transaction diluted the book value of their stock, by the same token the 1933 contract enhanced it. However, having found the 1933 contract void it followed as a matter of course that the 1954 transaction must fail due to inadequate consideration. Then upon the theory of equity between the parties the court in fact rescinded the 1933 contract and in placing the parties in status quo allowed Susan S. White to retain the 200 shares upon payment of an additional sum of $5571.49 to the company.

In view of our holding that the 1933 contract was valid, the situation of the parties should be, as stated by appellants in their brief, "Susan S. White will have 200 shares of stock; Northern Lumber Company $20,000." However appellees have not appealed and the error of the trial court being against them the decree must stand. Smith v. Knight, 88 Iowa 257, 55 N.W. 189; Thompson v. Butler, 223 Iowa 1085, 274 N.W. 110.

For the reasons above set forth the decree of the trial court is affirmed.—Affirmed.

All JUSTICES concur.